UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JABARI ISSA MANDELA <br> (A/K/A JOHN HENRY WOODEN), <br><br> Plaintiff, <br><br> v. <br><br> D.C. STEPHENS, ET AL., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )  No. 3:07-0272 <br> )  Judge Echols <br> ) <br> ) <br> ) |

**MEMORANDUM**

The plaintiff, proceeding *pro se*, is a prisoner in the Northeast Correctional Complex (NECX) in Mountain City, Tennessee. He brings this action under 42 U.S.C. § 1983 against the Tennessee Department of Correction (TDOC); D.C. Stephens, TDOC Legal Administrator; Candace Whisman, Manager, TDOC Sentence Management Services; and Roberta Anderson, Administrative Assistant, TDOC Sentence Management Services. The plaintiff seeks money damages, injunctive, and declaratory relief, alleging that the defendants violated his rights under the due process and *ex post facto* clauses of the United States Constitution.

The substance of the plaintiff's complaint is that the parole eligibility dates for his four 1982 felony convictions[1] have been miscalculated. (Docket Entry No. 1, ¶ IV.1, p. 4). The plaintiff asserts that he was sentenced under Tennessee's indeterminate and Class X sentencing laws in effect at the time he committed the offenses. (Docket Entry No. 1, ¶ IV.7, p. 6). According to the plaintiff, in 1985, the Tennessee Legislature enacted legislation that permitted prisoners sentenced under

---

[1] The plaintiff was convicted of the following felonies in 1982 and sentenced as indicated: second-degree burglary, 6-15 years; aggravated rape, life; aggravated assault, 3-9 years; and aggravated sexual battery, 35 years. The plaintiff's sentences were ordered to be served consecutively.

Class X sentencing laws to "waive out" of the sentencing laws that existed at the time, laws "which prevented him from earning sentencing credits . . . ."[2]  (Docket Entry No. 1, ¶ IV.6, p. 6).

The plaintiff maintains that, "[a]s early as Spring 1986 and as late as . . . 2005," TDOC employees have been unable advise him"with regard to his signing . . . the waiver because of the two different types of sentences that he had received." (Docket Entry No. 1, ¶ IV.7, p. 6). According to the plaintiff, he did not sign a waiver until 2005 "because none of [the] prior case managers ha[d] been able to explain [that] his indeterminate sentences w[ould] not be increased [by] . . . signing the waiver." (Docket Entry No. 1, ¶ IV.9-10, pp. 6-7).

The plaintiff claims that he submitted an inmate request on March 24, 2005 asking TDOC to correct the calculation of his sentences before he signed a waiver. (Docket Entry No. 1, ¶ IV.9, p. 7). The plaintiff avers that, in her response to his request, defendant Anderson recommended that he sign a waiver on his "life sentence and his Class X sentences," which the plaintiff apparently did, the result of which was that his waiver was backdated to January 10, 1989 on two counts in case C-9468, and his release eligibility date was reduced by nearly five (5) years in that case. (Docket Entry No. 1, ¶¶ IV.10-11, p. 7).

Later that year, in September 2005, the plaintiff asserts that he submitted a petition to TDOC "for a declaratory order, requesting that [TDOC] convene a contested case hearing" to determine whether "the sentence management services staff improperly calculated his initial (first) . . .

---

[2] Tennessee's Comprehensive Correction Improvement Act of 1985 applied the provisions of the Tennessee Reform Act of 1982 regarding the release eligibility date, manner of service, and release and parole to defendants who committed Class X felonies before July 1, 1982. *See* Comprehensive Correction Improvement Act of 1985, ch. 5, §§ 7-8, 1985 Tenn. Pub. Acts 22, 23. Additionally, the Act extended eligibility for sentence reduction credits to Class X felons. *Id*., ch. 5, § 12(c)(2)-(3), 1985 Tenn. Pub. Acts 22, 25. Neither of these acts repealed the Class X classification. *See Eddie DePriest v. State*, No. W2003-02561- CCA-R3-HC, 2004 WL 1872897, at * 2 (Tenn. Crim. App., at Jackson, Aug. 20, 2004), *per. app. denied*, (Tenn. Dec. 20, 2004). Rather, the legislation merely required sentencing for Class X felonies to be under the 1982 Act. *Id*. (citation omitted). The Class X designation of offenses was not repealed until the enactment of the 1989 sentencing code, which became effective on November 1, 1989. *See* Acts 1989, ch. 591, § 1. Prisoners wanting to begin earning sentence reduction credits were required to sign written waivers in order to be eligible. Tenn. Code Ann. § 41-21-236(c)(3) (2003).

2

sentence . . . ."³ (Docket Entry No. 1, ¶ IV.12, p. 8). The plaintiff claims that TDOC denied his petition because of the mixed nature of his sentences, *i.e.*, indeterminate and Class X. (Docket Entry No. 1, ¶¶IV.12-13, p. 8) The plaintiff alleges that other prisoners who received "mixed" sentences have been treated differently than he. (Docket Entry No. 1, ¶¶ IV.14-15, pp. 8-9).

According to the plaintiff, he submitted a request the following year, in September 2006, for a "retroactive custodial parole hearing due to the errors in the calculation of [his] parole eligibility . . . ." (Docket Entry No. 1, ¶ IV.16, p. 9). More particularly, the plaintiff asserts that he submitted an inmate request to the NECX staff requesting the "correct calculation of his first of four consecutive sentences . . . ." (Docket Entry No. 1, ¶ IV.17, p. 9). According to the plaintiff, the NECX staff "had the authority to correct the calculation of the [second-degree burglary] sentence and notify the parole board that [he] [wa]s eligible for [a] retroactive custodial parole hearing." (Docket Entry No. 1, ¶ IV.17, p. 9). The plaintiff alleges that, in her written response, defendant Whisman wrote that he was "'not serving the type of sentence that requires custodial parole,'" and that his release eligibility date was "'calculated accurately based on the sentences received . . . .'" (Docket Entry No. 1, ¶ IV.18, pp. 9-10) The plaintiff claims that his request for a hearing was denied.

Finally, the plaintiff asserts that, in November 2006, he submitted a "petition for a declaratory order, challenging [TDOC's] calculation of his first sentence" because TDOC had "not calculated his additional consecutive sentences under the sentencing laws" that existed then. (Docket Entry No. 1, ¶ IV.19, p. 10) According to the plaintiff, the improper calculation "lengthen[ed] the sentences . . . in violation of [the] Ex Post Facto Clause . . . ." (Docket Entry No. 1, ¶ IV.19, p. 10). The plaintiff maintains that, in denying his petition, defendant Stephens wrote that

---

³ It is unclear which sentence is the "first" sentence to which the plaintiff refers. Based on the complaint as a whole, the Court concludes that the "first" sentence is the 6-15 year sentence for second-degree burglary.

3

the plaintiff was granted parole on his first sentence effective July 10, 1988. (Docket Entry No. 1, ¶ IV.20, pp. 10-11). According to the plaintiff, this was is "direct contravention" with what he had been told previously. (Docket Entry No. 1, ¶ IV.20, p. 11).

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both elements of this two-part test must be met to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Under the Prison Litigation Reform Act (PLRA), the Court is required to dismiss a prisoner-plaintiff's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). A complaint is frivolous and warrants dismissal when the claims "lack[] an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Claims lack an arguable basis in law or fact if they contain factual allegations that are fantastic or delusional, or if they are based on legal theories that are indisputably meritless. *Id.* at 327-28; *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198-99 (6th Cir. 1990). Although *pro se* complaints are to be construed liberally by the courts, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), under the PLRA, "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal," *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997). Although the plaintiff has paid the filing fee in this matter, because he is a prisoner, his complaint remains subject to an initial frivolity review. 28 U.S.C. § 1915A.

4

The plaintiff's claims against TDOC and the other defendants are grounded in his allegation that TDOC has computed his sentences incorrectly. The law is well established that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . . even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994)(citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973). A § 1983 claim challenging confinement, or the manner in which a sentence is being served, must be dismissed even where the plaintiff seeks only injunctive or monetary relief. *Heck*, 512 U.S. at 489-90 (claim for damages is not cognizable); *Preiser*, 411 U.S. at 488-90 (claim for injunctive relief is cognizable only under 28 U.S.C. § 2254). Moreover, a state prisoner does not state a cognizable claim under § 1983 where a ruling on his claim would imply the invalidity of his conviction and/or sentence, unless and until the conviction and/or sentence has been favorably terminated, in this case, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. *Heck*, 512 U.S. at 486-87; *Ruff v. Runyon*, 258 F.3d 498, 502 (6th Cir. 2001).

The plaintiff's allegation that TDOC computed his sentences incorrectly is a challenge to the manner in which he is serving those sentences. *Heck* requires that the plaintiff file a petition under 28 U.S.C. § 2241 to obtain relief on such a claim. *See Muhammad Ali v. Tennessee Board of Pardon and Paroles*, 431 F.3d 896, 896 (6th Cir. 2006); *Cohen v. United States*, 593 F.2d 766, 770-771 (6th Cir. 1979). Therefore, the plaintiff's demand that the court direct the defendants to recalculate his sentences (Docket Entry No. 1, ¶ 26.c, p. 13) is not cognizable under § 1983.

The plaintiff's demands for money damages and other injunctive/declaratory relief are cognizable under § 1983. However, the sentence computation issue is central to the remainder of his claims against TDOC, as well as his claims against the other defendants. Thus, any relief to which the Plaintiff might be entitled under § 1983 is predicated on an affirmative showing that the

5

sentences at issue were, in fact, computed improperly. In other words, unless and until a state or federal court determines the sentence computation issue in the plaintiff's favor, he may not seek such relief under § 1983.

For the reasons explained herein, the complaint will be dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1).

An appropriate Order will be entered.

/s/ Robert L. Echols
Robert L. Echols
United States District Judge